IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACOB MATHES, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOLSON COORS BREWING COMPANY, MARK R. HUNTER, and TRACEY I. JOUBERT,<br><br>Defendants. | ) Case No:<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Jacob Mathes ("Plaintiff") individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Molson Coors Brewing Company ("Molson Coors" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased publicly traded Molson Coors securities from February 14, 2017 through February 11, 2019, both dates inclusive ("Class Period"), seeking to recover compensable damages caused by Defendants' violations of

1

federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.  This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.  Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as the Company's U.S. headquarters are located within this District, the Company conducts substantial business in this District, and the alleged misstatements entered and subsequent damages occurred in this District.

5.  In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff, as set forth in the accompanying PSLRA Certification, acquired Molson Coors securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.  Defendant Molson Coors manufactures and sells beer and other beverage products in the United States, Canada, Europe, and internationally. The Company is a Delaware corporation. The headquarters of the Company's U.S. segment is located in Chicago, Illinois.

During the Class Period, Molson Coors securities traded on the New York Stock Exchange ("NYSE") under the ticker symbol, "TAP."

8. Defendant Mark R. Hunter ("Hunter") has served as the Chief Executive Officer ("CEO") and President of the Company since January 1, 2015, and a director of the Company's Board since 2015.

9. Defendant Tracey I. Joubert ("Joubert") served as Company's Chief Financial Officer ("CFO") of the Company since November 17, 2016.

10. Defendants Hunter and Joubert are herein referred to as "Individual Defendants."

11. Collectively, Defendant Molson Coors and Individual Defendants are herein referred to as "Defendants."

12. Each of the Individual Defendants:

    a. directly participated in the management of the Company;

    b. was directly involved in the day-to-day operations of the Company at the highest levels;

    c. was privy to confidential proprietary information concerning the Company and its business and operations;

    d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

      g.      approved or ratified these statements in violation of the federal securities laws.

13. Molson Coors is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Molson Coors under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

15. On October 11, 2016, Molson Coors completed its acquisition of SABMiller plc's 58% stake in MillerCoors LLC, the joint venture formed in the United States and Puerto Rico by both companies in 2008.

### Defendants' False and Misleading Class Period Statements

16. On February 14, 2017, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2016 (the "2016 10-K"). The 2016 10-K was signed by Defendants Hunter and Joubert. The 2016 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hunter and Joubert attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2016 10-K stated the Company's internal control over financial reporting was effective, excluding the internal control over financial reporting at its recently acquired stake in MillerCoors LLC.

4

17. The 2016 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.125 billion for the period covered by the 2016 10-K. The 2016 10-K stated, in relevant part:

| | | For the Years Ended | | |
|---|---|---|---|---|
| | | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| Sales | $ | 6,597.4 $ | 5,127.4 $ | 5,927.5 |
| Excise taxes | | (1,712.4) | (1,559.9) | (1,781.2) |
| Net sales | | 4,885.0 | 3,567.5 | 4,146.3 |
| Cost of goods sold | | (3,003.1) | (2,163.5) | (2,493.3) |
| Gross profit | | 1,881.9 | 1,404.0 | 1,653.0 |
| Marketing, general and administrative expenses | | (1,597.3) | (1,051.8) | (1,163.9) |
| Special items, net | | 2,523.9 | (346.7) | (324.4) |
| Equity income in MillerCoors | | 500.9 | 516.3 | 561.8 |
| Operating income (loss) | | 3,309.4 | 521.8 | 726.5 |
| Other income (expense), net | | | | |
| Interest expense | | (271.6) | (120.3) | (145.0) |
| Interest income | | 27.2 | 8.3 | 11.3 |
| Other income (expense), net | | (29.7) | 0.9 | (6.5) |
| Total other income (expense), net | | (274.1) | (111.1) | (140.2) |
| Income (loss) from continuing operations before income taxes | | 3,035.3 | 410.7 | 586.3 |
| Income tax benefit (expense) | | (1,050.7) | (51.8) | (69.0) |
| Net income (loss) from continuing operations | | 1,984.6 | 358.9 | 517.3 |
| Income (loss) from discontinued operations, net of tax | | (2.8) | 3.9 | 0.5 |
| Net income (loss) including noncontrolling interests | | 1,981.8 | 362.8 | 517.8 |
| Net (income) loss attributable to noncontrolling interests | | (5.9) | (3.3) | (3.8) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ | 1,975.9 $ | 359.5 $ | 514.0 |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share: | | | | |
| From continuing operations | $ | 9.33 $ | 1.92 $ | 2.78 |
| From discontinued operations | | (0.01) | 0.02 | — |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share | $ | 9.32 $ | 1.94 $ | 2.78 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share: | | | | |
| From continuing operations | $ | 9.27 $ | 1.91 $ | 2.76 |
| From discontinued operations | | (0.01) | 0.02 | — |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share | $ | 9.26 $ | 1.93 $ | 2.76 |
| Weighted-average shares—basic | | 212.0 | 185.3 | 184.9 |
| Weighted-average shares—diluted | | 213.4 | 186.4 | 186.1 |
| Amounts attributable to Molson Coors Brewing Company | | | | |
| Net income (loss) from continuing operations | $ | 1,978.7 $ | 355.6 $ | 513.5 |

|  |  |  |  |
|---|---:|---:|---:|
| Income (loss) from discontinued operations, net of tax | (2.8) | 3.9 | 0.5 |
| Net income (loss) attributable to Molson Coors Brewing [] $ | 1,975.9 $ | 359.5 $ | 514.0 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2016 | December 31, 2015 | December 31, 2014 |
| Net income (loss) including noncontrolling interests | $ 1,981.8 | $ 362.8 | $ 517.8 |
| Other comprehensive income (loss), net of tax: | | | |
|    Foreign currency translation adjustments | (234.4) | (918.4) | (849.8) |
|    Unrealized gain (loss) on derivative instruments | 9.7 | 20.9 | 7.0 |
|    Reclassification of derivative (gain) loss to income | (3.0) | (5.4) | 2.3 |
|    Pension and other postretirement benefit adjustments | 62.3 | 33.6 | (136.8) |
|    Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 31.4 | 37.5 | 26.2 |
|    Reclassification of historical share of MillerCoors' AOCI loss | 258.2 | — | — |
|    Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | 22.3 | 34.3 | (102.2) |
| Total other comprehensive income (loss), net of tax | 146.5 | (797.5) | (1,053.3) |
| Comprehensive income (loss) | 2,128.3 | (434.7) | (535.5) |
| Comprehensive (income) loss attributable to noncontrolling interests | (3.0) | (2.3) | (3.8) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 2,125.3 | $ (437.0) | $ (539.3) |

18.    On February 14, 2018, Molson Coors filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 10-K"). The 2017 10-K was signed by Defendants Hunter and Joubert. The 2017 10-K contained signed SOX certifications by Defendants Hunter and Joubert attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2017 10-K stated the Company's internal control over financial reporting was effective as of December 31, 2017.

19.    The 2017 10-K provided the Company's consolidated statement of operations, which reported comprehensive income attributable to Molson Coors as $2.126 billion for the period covered by the 2017 10-K. The 2017 10-K stated, in relevant part:

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| Sales | $ 13,471.5 | $ 6,597.4 | $ 5,127.4 |
| Excise taxes | (2,468.7) | (1,712.4) | (1,559.9) |
| Net sales | 11,002.8 | 4,885.0 | 3,567.5 |

| | | | |
|---|---:|---:|---:|
| Cost of goods sold | (6,217.2) | (2,987.5) | (2,131.6) |
| Gross profit | 4,785.6 | 1,897.5 | 1,435.9 |
| Marketing, general and administrative expenses | (3,032.4) | (1,589.8) | (1,038.3) |
| Special items, net | (28.1) | 2,522.4 | (346.7) |
| Equity income in MillerCoors | — | 500.9 | 516.3 |
| Operating income (loss) | 1,725.1 | 3,331.0 | 567.2 |
| Other income (expense), net | | | |
| Interest expense | (349.3) | (271.6) | (120.3) |
| Interest income | 6.0 | 27.2 | 8.3 |
| Other income (expense), net | (0.1) | (29.7) | 0.9 |
| Total other income (expense), net | (343.4) | (274.1) | (111.1) |
| Income (loss) from continuing operations before income taxes | 1,381.7 | 3,056.9 | 456.1 |
| Income tax benefit (expense) | 53.2 | (1,055.2) | (61.5) |
| Net income (loss) from continuing operations | 1,434.9 | 2,001.7 | 394.6 |
| Income (loss) from discontinued operations, net of tax | 1.5 | (2.8) | 3.9 |
| Net income (loss) including noncontrolling interests | 1,436.4 | 1,998.9 | 398.5 |
| Net (income) loss attributable to noncontrolling interests | (22.2) | (5.9) | (3.3) |
| Net income (loss) attributable to Molson Coors Brewing Company | $ 1,414.2 | $ 1,993.0 | $ 395.2 |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share: | | | |
| From continuing operations | $ 6.56 | $ 9.41 | $ 2.11 |
| From discontinued operations | 0.01 | (0.01) | 0.02 |
| Basic net income (loss) attributable to Molson Coors Brewing Company per share | $ 6.57 | $ 9.40 | $ 2.13 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share: | | | |
| From continuing operations | $ 6.52 | $ 9.35 | $ 2.10 |
| From discontinued operations | 0.01 | (0.01) | 0.02 |
| Diluted net income (loss) attributable to Molson Coors Brewing Company per share | $ 6.53 | $ 9.34 | $ 2.12 |
| Weighted-average shares—basic | 215.4 | 212.0 | 185.3 |
| Weighted-average shares—diluted | 216.5 | 213.4 | 186.4 |
| Amounts attributable to Molson Coors Brewing Company | | | |
| Net income (loss) from continuing operations | $ 1,412.7 | $ 1,995.8 | $ 391.3 |
| Income (loss) from discontinued operations, net of tax | 1.5 | (2.8) | 3.9 |
| Net income (loss) attributable to Molson Coors Brewing Company | $ 1,414.2 | $ 1,993.0 | $ 395.2 |

| | For the Years Ended | | |
|---|---:|---:|---:|
| | December 31, 2017 | December 31, 2016 | December 31, 2015 |
| Net income (loss) including noncontrolling interests | $ 1,436.4 | $ 1,998.9 | $ 398.5 |
| Other comprehensive income (loss), net of tax: | | | |
| Foreign currency translation adjustments | 686.7 | (234.4) | (918.4) |
| Unrealized gain (loss) on derivative and non-derivative financial instruments | (133.4) | 9.7 | 20.9 |
| Reclassification of derivative (gain) loss to income | 1.3 | (3.0) | (5.4) |

| | | | |
|---|---:|---:|---:|
| Pension and other postretirement benefit adjustments | 145.7 | 53.8 | 19.3 |
| Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income | 3.6 | 22.8 | 16.1 |
| Reclassification of historical share of MillerCoors' AOCI loss | — | 258.2 | — |
| Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | 10.4 | 22.3 | 34.3 |
| Total other comprehensive income (loss), net of tax | 714.3 | 129.4 | (833.2) |
| Comprehensive income (loss) | 2,150.7 | 2,128.3 | (434.7) |
| Comprehensive (income) loss attributable to noncontrolling interests | (24.7) | (3.0) | (2.3) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 2,126.0 | $ 2,125.3 | $ (437.0) |

20. The statements referenced in ¶¶16-19 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Molson Coors failed to properly reconcile the outside basis deferred income tax liability for Molson Coors' investment in its MillerCoors, LLC partnership; (2) consequently, Molson Coors misreported net income in its consolidated financial statements for the fiscal years ending December 31, 2016 and December 31, 2017, resulting in an overall downward revision to net income; (3) Molson Coors lacked adequate internal controls over financial reporting; and (4) as a result, Defendants' statements about Molson Coors' business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Emerges**

21. On February 12, 2019, before the market opened, Molson Coors announced that its "previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon." The Company's announcement stated, in relevant part:

On February 8, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of Molson Coors Brewing Company (the "Company"), after discussion with management of the Company and PricewaterhouseCoopers LLP, the Company's independent registered public accounting firm, concluded that the ***Company's previously issued consolidated financial statements as of and for the years ended December 31, 2017 and December 31, 2016 should be restated and no longer be relied upon.***

***As part of preparing its 2018 financial statements, the Company identified errors in the accounting for income taxes related to the deferred tax liabilities for its partnership in MillerCoors, LLC ("MillerCoors"). Upon the closing of the acquisition of the remaining interest in MillerCoors (the "Acquisition") in the fourth quarter of 2016 and completion of the related deferred income tax calculations, the Company did not reconcile the outside basis deferred income tax liability for the investment in the partnership to the book-tax differences in the underlying assets and liabilities within the partnership.*** As a result of completing this reconciliation as part of preparing its 2018 consolidated financial statements, the Company identified a difference related to historical financial statements and concluded that the previously issued 2017 and 2016 consolidated financial statements were misstated. ***Accordingly, the Company is restating its consolidated financial statements as of and for the year ended December 31, 2016 to increase its deferred tax liabilities and deferred tax expense by $399.1 million, with a corresponding decrease in net income and earnings per share. The Company's consolidated financial statements as of and for the year ended December 31, 2017 are also being restated to reflect the revaluation of such deferred liabilities due to the U.S. Tax Cuts and Job Act of 2017 and to correct further insignificant income tax errors resulting in a decrease to deferred tax liabilities and deferred tax expense of $151.4 million, resulting in corresponding increases to the Company's net income and earnings per share. These adjustments resulted in an aggregate $247.7 million increase to the Company's deferred tax liabilities and corresponding decrease in retained earnings and total equity as of December 31, 2017.***

\* \* \*

***In connection with the restatement, management of the Company has determined that a material weakness existed in the Company's internal control over financial reporting as of December 31, 2018 relating to the design and maintenance of effective controls over the completeness and accuracy of the accounting for and disclosure of the income tax effects of acquired partnership interests.*** Specifically, the Company did not design appropriate controls to identify and reconcile deferred income taxes associated with the accounting for acquired partnership interests. As a result, the Company's Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective as of December 31, 2018, and the Company's management has concluded that its internal control over financial reporting was not effective as of December 31, 2018.

9

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, PricewaterhouseCoopers LLP.

(Emphasis added.)

22. That same day, the Company filed restated consolidated financial statements for the fiscal years ended December 31, 2016 and December 31, 2017 in the Company's annual report for the fiscal year ending December 31, 2018 (the "2018 10-K"). The Company's 2018 10-K stated, in relevant part:

|  | | For the Years Ended | | |
|---|---|---|---|---|
|  | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Sales | $ 13,338.0 | $ 13,471.5 | $ 6,597.4 |
| Excise taxes | (2,568.4) | (2,468.7) | (1,712.4) |
| Net sales | 10,769.6 | 11,002.8 | 4,885.0 |
| Cost of goods sold | (6,584.8) | (6,236.7) | (2,999.0) |
|     Gross profit | 4,184.8 | 4,766.1 | 1,886.0 |
| Marketing, general and administrative expenses | (2,802.7) | (3,052.0) | (1,597.2) |
| Special items, net | 249.7 | (36.4) | 2,532.9 |
| Equity income in MillerCoors | — | — | 500.9 |
|     Operating income (loss) | 1,631.8 | 1,677.7 | 3,322.6 |
| Other income (expense), net | | | |
|     Interest expense | (306.2) | (349.3) | (271.6) |
|     Interest income | 8.0 | 6.0 | 27.2 |
|     Other pension and postretirement benefits (costs), net | 38.2 | 47.4 | 8.4 |
|     Other income (expense), net | (12.0) | 1.4 | (32.5) |
|     Total other income (expense), net | (272.0) | (294.5) | (268.5) |
| Income (loss) before income taxes | 1,359.8 | 1,383.2 | 3,054.1 |
| Income tax benefit (expense) | (225.2) | 204.6 | (1,454.3) |
|     Net income (loss) | 1,134.6 | 1,587.8 | 1,599.8 |
| Net (income) loss attributable to noncontrolling interests | (18.1) | (22.2) | (5.9) |
|     Net income (loss) attributable to Molson Coors Brewing Company | $ 1,116.5 | $ 1,565.6 | $ 1,593.9 |
| | | | |
| Net income (loss) attributable to Molson Coors Brewing Company per share: | | | |
|     Basic | $ 5.17 | $ 7.27 | $ 7.52 |
|     Diluted | $ 5.15 | $ 7.23 | $ 7.47 |
| | | | |
| Weighted-average shares outstanding: | | | |
|     Basic | 216.0 | 215.4 | 212.0 |

| | | | |
|---|---:|---:|---:|
| Dilutive effect of share-based awards | 0.6 | 1.1 | 1.4 |
| Diluted | 216.6 | 216.5 | 213.4 |
| | | | |
| Anti-dilutive securities excluded from computation of diluted EPS | 0.8 | 0.3 | 0.1 |

| | For the Years Ended | | |
|---|---|---|---|
| | December 31, 2018 | December 31, 2017 As Restated | December 31, 2016 As Restated |
| Net income (loss) including noncontrolling interests | $ 1,134.6 | $ 1,587.8 | $ 1,599.8 |
| Other comprehensive income (loss), net of tax: | | | |
|    Foreign currency translation adjustments | (359.0) | 686.7 | (234.4) |
|    Reclassification of cumulative translation adjustment to income | 6.0 | — | — |
|    Unrealized gain (loss) on derivative and non-derivative financial instruments | 10.9 | (133.4) | 9.7 |
|    Reclassification of derivative (gain) loss to income | 2.5 | 1.3 | (3.0) |
|    Pension and other postretirement benefit adjustments | 43.5 | 145.7 | 53.8 |
|    Amortization of net prior service (benefit) cost and net actuarial (gain) loss to income and settlement | 4.9 | 3.6 | 22.8 |
|    Reclassification of historical share of MillerCoors' AOCI loss | — | — | 258.2 |
|    Ownership share of unconsolidated subsidiaries' other comprehensive income (loss) | (0.8) | 10.4 | 22.3 |
| Total other comprehensive income (loss), net of tax | (292.0) | 714.3 | 129.4 |
| Comprehensive income (loss) | 842.6 | 2,302.1 | 1,729.2 |
| Comprehensive (income) loss attributable to noncontrolling interests | (16.1) | (24.7) | (3.0) |
| Comprehensive income (loss) attributable to Molson Coors Brewing Company | $ 826.5 | $ 2,277.4 | $ 1,726.2 |

23. On this news, shares of Molson Coors fell $6.17 per share or approximately 9.5% to close at $59.19 per share on February 12, 2019, damaging investors.

24. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of Molson Coors during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant

11

times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

31. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NYSE, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

32. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

33. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

34. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated

thereunder by the SEC.

36. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

37. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

38. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

39. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

40. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

41. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

42. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

43. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in

connection with their purchases of the Company's securities during the Class Period.

## COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

45. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

46. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

47. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

48. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and

exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

49. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 15, 2019

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

/s/Carl V. Malmstrom
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60602

Tel: (312) 984-0000
Fax: (312) 214-3110
Email: malmstrom@whafh.com

*Liaison Counsel for Plaintiff*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

19